**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CARLO CAVALLO, *on behalf of himself*   :
*and all those similarly-situated*,   :
                                   :
           Plaintiff,   :
                                   :      Civ. Action No. 16-4264 (FLW)
v.   :
                                   :
UBER TECHNOLOGIES, INC. and ,   :      **OPINION**
RASIER, LLC,   :
                                   :
           Defendants.   :
_____:

**WOLFSON, District Judge**:

      Plaintiff Carlo Cavallo (hereinafter "Plaintiff"), an Uber driver, filed this action against Defendant Uber Technologies, Inc. (hereinafter "Defendant" or "Uber"), alleging that Defendant (i) misclassified him and other similarly situated New Jersey Uber drivers as independent contractors, rather than employees; (ii) failed to pay overtime compensation; and (iii) improperly interfered with Plaintiff's ability to accept gratuities. Defendant now moves to dismiss the Complaint and compel arbitration, arguing that Plaintiff is bound by the arbitration clause in the Raiser Software License and Online Services Agreement that Plaintiff signed before driving for Uber. For the reasons set forth below, the Court finds that a valid arbitration agreement between the parties exists. Defendant's motion is **GRANTED**.

## BACKGROUND

      Uber is a technology company that serves as a conduit between riders looking for transportation and drivers seeking riders. Declaration of Michael Colman (dated October 21, 2016) (hereinafter, "Colman Dec."), ¶ 3. Uber provides this technology through its smartphone

application (hereinafter, the "Uber App") that allows riders and drivers to connect based on their geographic location. Colman Dec., ¶ 3. Raiser, LLC is a wholly owned subsidiary of Uber, and operates as a technology service provider. Colman Dec., ¶ 2.

Plaintiff registered with the Uber App in order to use its "uberX" platform, which provided him with the option to accept ride requests from prospective passengers and transport them for a fare. Colman Dec., ¶¶ 4, 13. In doing so, Plaintiff was required to electronically accept the applicable Raiser Software License and Online Services Agreement, which Uber subsequently updated on November 10, 2014 (hereinafter, the "Raiser Agreement").[1] Colman Dec., ¶¶ 7, 11. When Plaintiff logged on to the Uber App with his unique user name and password, he was given the opportunity to review the Raiser Agreement by clicking a hyperlink to the Raiser Agreement within the Uber App. Colman Dec., ¶ 9. To advance past the screen with the hyperlink and actively use the Uber App, Plaintiff must first confirm that he had reviewed and accepted the Raiser Agreement by clicking "YES, I AGREE." Colman Dec., ¶ 9. After clicking "YES, I AGREE," he was prompted to confirm that he reviewed and accepted the Raiser Agreement for a second time.[2] Colman Dec., ¶ 9.

Plaintiff was permitted to spend as much time as he found necessary in reviewing the Raiser Agreement on his smartphone or other electronic devices before accepting it. Colman Dec., ¶ 9. In fact, Plaintiff accepted the Raiser Agreement on January 20, 2015, over two months after it was made available for his review. Colman Dec., ¶ 13. On March 26, 2015, after Plaintiff confirmed

---

[1]     This newly-released Raiser Agreement was accepted by Plaintiff through the Uber App on January 20, 2015. Colman Dec., ¶ 13.

[2]     Although the Raiser Agreement is binding upon Plaintiff and Raiser, LLC, Uber may enforce its provisions, including the agreement to arbitrate disputes, as an affiliate of Raiser LLC. *See* Colman Dec., ¶ 13, Ex. C, § 14.4.

his acceptance for a second time through the Uber App, the Raiser Agreement was uploaded to Plaintiff's "driver portal," where he could access the Agreement at his own leisure, either online or by printing out a hard copy. Colman Dec., ¶ 15.

The first page of the Raiser Agreement contains a paragraph, written in large bold and capital text, indicating that a voluntary arbitration agreement (hereinafter, the "Arbitration Provision") is contained therein, and that Plaintiff should review the Raiser Agreement with an attorney, before agreeing to its terms and conditions:

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.**

Colman Dec., ¶ 13, Ex. C, at 1. A similar paragraph, also written in large bold and capital text, appears within the text of the arbitration provision itself, stating:

> **WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION. YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS—INCLUDING BUT NOT LIMITED TO AN ATTORNEY— REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION**.

Colman Dec., ¶ 13, Ex. C, § 15.3.

The Arbitration Provision requires transportation drivers, such as Plaintiff,—if they do not opt out—to individually arbitrate all disputes arising out of, or relating to, the Raiser Agreement, or their relationship with Uber, including disputes alleging breach of contract, wage and hour, and compensation claims. Colman Dec., ¶ 13, Ex. C, § 15.3. To that end, the Arbitration Provision, in pertinent part, reads as follows:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

Colman Dec., ¶ 13, Ex. C, § 15.3. It further provides:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action**.

Colman Dec., ¶ 13, Ex. C, § 15.3(i).

The Arbitration Provision also contains a delegation clause, requiring the arbitrator to decide issues of arbitrability:

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.

Colman Dec., ¶ 13, Ex. C, § 15.3(i). Notably, after Plaintiff confirmed that he had reviewed and accepted the Raiser Agreement, including the Arbitration Provision, Plaintiff was provided with an additional 30 days to opt-out of the Arbitration Provision:

**Your Right To Opt Out Of Arbitration**.

**Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g.*, UPS, Federal Express, etc.), or by hand delivery to [Raiser's legal department].**

Colman Dec., ¶ 13, Ex. C, § 15.3(viii).[3] Notwithstanding these aforementioned provisions, Plaintiff filed this suit. Specifically, Plaintiff alleges that Defendant misclassified him and other similarly situated New Jersey Uber drivers as independent contractors, as opposed to employees, failed to pay overtime compensation, and improperly interfered with Plaintiff's ability to accept gratuities.

In the present matter, Defendant moves to dismiss the complaint and compel arbitration, arguing that Plaintiff has agreed to arbitrate issues of arbitrability, as well as his labor-related claims. However, in an attempt to circumvent the Raiser Agreement's Arbitration Provision, Plaintiff maintains that arbitration under the Agreement is unenforceable, because the arbitration

---

[3]     The record indicates that Plaintiff's counsel attempted to opt Plaintiff out of the June 2014 Agreement on January 8, 2015, approximately six months after Plaintiff had executed the Agreement. Colman Dec., ¶ 14. Plaintiff's counsel also attempted to opt Plaintiff out of the November 2014 Agreement on December 16, 2015, approximately 9 months after Plaintiff had executed that Agreement. Colman Dec., ¶ 14. Therefore, both of these attempts are untimely, as they occurred substantially after the allotted 30-day period in which Plaintiff was permitted to opt out of the Agreement.

agreement (i) violates the National Labor Relations Act (hereinafter, the "NLRA") and the Norris-LaGuardia Act, and (ii) the delegation clause is "buried" within the text of the Agreement. Defendant disputes each of these contentions.

## DISCUSSION

### I.      Standard of Review

The FAA "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). The FAA was designed by Congress "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)). In achieving this end, the FAA provides that contract provisions containing arbitration clauses "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2-4. Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). In that connection, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Id. (*Mercury Constr. Corp.*, 460 U.S. at 24-25).

Although federal law presumptively favors the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it must affirmatively answer

the following two questions before compelling arbitration pursuant to § 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). When performing this inquiry, courts apply "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie*, *McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (quotations and citations omitted), and, "when determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co*, 584 F.3d at 524 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Even though threshold issues concerning the arbitration agreement are presumptively reserved for the Court, parties may agree to have these issues decided by an arbitrator through the inclusion of a delegation clause within the arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") (citations omitted). These delegation clauses are "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Accordingly, the delegation provision is severable from the underlying agreement to arbitrate, and if the plaintiff chooses to challenge the delegation provision, it must do so specifically. *Id.* at 72. The aforementioned presumption of

arbitrability, however, does not apply to the arbitration agreement's delegation clause. Indeed, the Supreme Court has cautioned that "'[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* at 79 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

## II.    The Agreement's Class Waiver Does Not Violate the NLRA

First, Plaintiff argues that the arbitration agreement violates the NLRA, under which employees are accorded the right to engage in concerted activities, because the agreement requires Uber drivers to arbitrate claims individually. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), at 3-18. More specifically, Plaintiff contends that "an arbitration provision that prevents employees from engaging in concerted activities for their mutual aid and protection . . . violates the NLRA, regardless of whether [those employees] have an opportunity to opt out [of the arbitration provision.]" Pl.'s Opp'n, at 3. In support, Plaintiff cites *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) and *On Assignment Staffing Servs.*, 362 NLRB 189, 2015 NLRB Lexis 662 (Aug. 27, 2015), wherein the Seventh Circuit and NLRB (hereinafter, the "Board") held, respectively, that class waivers conflict with the NLRA. Pl.'s Opp'n, at 3-11. Plaintiff further cites three trial court decisions that have applied the aforementioned precedent in invalidating arbitration agreements similar to the one at bar. *See Tigges v. AM Pizza, Inc.*, 16-10474, 2016 U.S. Dist. LEXIS 100366 (D. Mass. July 29, 2016); *Curtis v. Contract Mgmt. Servs.*, No. 15-487, 2016 U.S. Dist. LEXIS 134129 (D. Me. Sept. 29, 2016); *In re Fresh & Easy, LLC*, 2016 Bankr. LEXIS 3690 (D. Del. Oc. 11, 2016).

As a preliminary matter, the Court notes that, in making his argument, Plaintiff presumes his status under the Raiser Agreement as that of an employee, as opposed to that of an independent

contractor. Indeed, the NLRA does not govern independent contractor relationships. Plaintiff's employment status is the main contention between the parties. However, this issue need not be resolved on this motion because, even if Uber employed Plaintiff, the Raiser Agreement's arbitration provision would not violate the NLRA. In fact, the Court, in a prior Opinion, rejected an identical argument raised by a plaintiff-Uber driver who also entered into a similar Raiser Agreement with Uber. *See Singh v. Uber Techs. Inc.*, No. 16-3044, 2017 U.S. Dist. LEXIS 12033 (D.N.J. Jan. 30, 2017). Because the issue addressed in *Singh* is indistinguishable from the issue presented on this motion, the reasoning delineated in that case is equally applicable here. Nonetheless, because the cases upon which Plaintiff relies were not addressed in *Singh*, I will discuss them here.

Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While "concerted activities" are not defined by the NLRA, it has been held to include "resort to administrative and judicial forums . . . . " *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978). And, some courts have interpreted this provision of the NLRA to protect collective-suit filings: "[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the [NLRA]." *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011). Furthermore, an employee's rights under § 7 of the NLRA are enforced by § 8 of the Act, which mandates that it "shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]." 29 U.S.C. § 158(a)(1).

Based upon differing interpretations of these provisions, the circuits are split on whether an arbitration agreement requiring the resolution of labor disputes on an individual basis violates § 8 of the NLRA. Indeed, a majority of the circuits that have dealt with this very question have upheld such arbitration clauses irrespective of § 7, by finding that the right to engage in a class action lawsuit is procedural, and thus waivable. *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.6 (2d Cir. 2013) ("We have previously explained that the procedural 'right' to proceed collectively [under the NLRA] presupposes, and does not create, a non-waivable, substantive right to bring such a claim.") (internal citation omitted); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2013) ("[W]e conclude that [the defendant] did not violate section 8(a)(1) [of the NLRA] by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes."); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 361 (5th Cir. 2015) ("We know that the right to proceed collectively cannot protect vindication of employees' statutory rights . . . because a substantive right to proceed collectively has been foreclosed by prior [Supreme Court] decisions.").

In contrast, a minority of circuits have found that an employer cannot require an employee to arbitrate disputes on an individual basis, because the right to engage in a class-action lawsuit, pursuant to § 7 of the NLRA, is substantive and unwaivable. *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016) ("That Section 7's rights are 'substantive' is plain from the structure of the NLRA: Section 7 is the NLRA's only substantive provision. Every other provision of the statute serves to enforce the rights Section 7 protects." (emphasis in original)); *Morris v. Ernst & Young*, LLP, 834 F.3d 975, 986 (9th Cir. 2016) ("The rights established in § 7 of the NLRA— including the right of employees to pursue legal claims together—are substantive. They are the central, fundamental protections of the Act, so the FAA does not mandate the enforcement of a

contract that alleges their waiver."). Accordingly, the circuits disagree as to whether an arbitration agreement, which prevents an employee from filing or participating in a class action lawsuit, is enforceable under the NLRA.

As this Court found in *Singh*, I need not reach that issue here, because arbitration under the Raiser Agreement is optional. In *Singh,* the plaintiff Uber driver argued that an identical arbitration provision under the Raiser Agreement was unenforceable, because it contained a class waiver in violation of the NLRA. *See Singh*, 2017 U.S. Dist. LEXIS 12033, at *25-26. Specifically, the plaintiff, there, argued that, under § 7 of the NLRA, he was entitled to partake in "concerted activities," which include the filing of class actions on behalf of all other similarly situated individuals. *Id*. According to the plaintiff, therefore, the arbitration agreement's class waiver violated § 8 the NLRA, because it required him to dispute claims against Uber on an individual basis only. *Id*.

I disagreed, reasoning that while § 8(a)(1) of the NLRA prevents an employer from "interfere[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights" that are granted to employees by § 7 of the NLRA, the Raiser Agreement in *Singh* was not in violation of the NLRA, because Uber did not partake in any such prohibited conduct. 29 U.S.C. § 158(a)(1). Indeed, because the plaintiff, in that case, could have exercised his right to opt out of the arbitration agreement, he was presented with the *option* of resolving disputes by arbitration or litigation. Stated differently, I found that Uber did not interfere, restrain, or coerce Plaintiff in the exercise of his rights under the NLRA, because Plaintiff voluntarily chose to arbitrate his claims against Uber.

Similarly, in the instant matter, the parties' arbitration agreement does not violate the NLRA, because arbitration was not mandatory. As conspicuously stated under § 15.3(viii) of the Raiser Agreement, Plaintiff was permitted to opt out of arbitration within a 30-day period:

> **Your Right To Opt Out Of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision . . . . within the 30-day period . . . . You have the right to consult with counsel of your choice concerning this Arbitration Provision.**

Colman Dec., ¶ 13, Ex. C, § 15.3(viii). Significantly, the provision also provides that an Uber driver would not face any adverse consequences in exercising his or her right to opt out of arbitration: "**You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**" Colman Dec., ¶ 13, Ex. C, § 15.3(viii). Like the plaintiff in *Singh*, therefore, Plaintiff, here, could have also chosen to opt out of arbitration, and that decision to litigate claims would not have altered the parties' relationship. Accordingly, because arbitration under the Agreement is voluntary in nature, the Court finds that it does not violate § 8 of the NLRA. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-76 (9th Cir. 2014) (holding that an arbitration agreement did not violate the NLRA, as "there [was no] basis for concluding that [the defendant employer] interfered with or restrained [the plaintiff employee] in the exercise of her right to file a class action.").

Despite Plaintiff's voluntary choice to arbitrate claims against Uber, Plaintiff argues that this Court should apply the Seventh Circuit's holding in *Lewis*, and find that the Raiser Agreement's arbitration provision is unlawful. In that case, the Seventh Circuit held that an arbitration agreement, which did not permit collective arbitration, or collective action in any forum, was unenforceable under the FAA. *Lewis*, 823 F.3d at 1151. *Lewis*, however, is

distinguishable from the case at bar. Specifically, the arbitration agreement, there, "*required certain groups of employees to agree to bring any wage-and-hour claims against the company only through individual arbitration.*" *Id.* at 1151 (emphasis added). In contrast, arbitration under the Raiser Agreement, as already noted above, is optional. Thus, under the Raiser Agreement, Plaintiff could elect to opt out of arbitration, whereas the plaintiff in *Lewis* was required to arbitrate his claims individually, as a condition of employment. And, more importantly, the Seventh Circuit, in *Lewis*, did not address the precise legal issue on this motion: whether an arbitration provision, under which a plaintiff has the right to opt out, violates § 8 of the NLRA. In fact, the *Lewis* court explicitly refrained from deciding whether an employee could voluntary forego his or her right to participate in class litigation:

> We are aware that the circuits have some differences of opinion in this area, although those differences do not affect our analysis here. The Ninth Circuit has held that an arbitration agreement mandating individual arbitration may be enforceable where the employee had the right to opt out of the agreement without penalty, reasoning that the employer therefore did not "interfere with, restrain, or coerce" her in violation of Section 8. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014). The Ninth Circuit's decision in *Johnmohammadi* conflicts with a much earlier decision from this court . . . . *We have no need to resolve these differences today, however, because in our case, it is undisputed that assent to Epic's arbitration provision was a condition of continued employment.*

*Id.* at 1155 (emphasis added). In light of these differences, therefore, the Court does not find *Lewis* instructive.[4] Indeed, that case did not resolve the question whether an arbitration provision, under which a plaintiff has the right to opt out and litigate disputes would violate § 8 of the NLRA.

---

[4]     Even some district courts within the Seventh Circuit have also distinguished *Lewis* on this very basis. *See, e.g.*, *Gunn v. Uber Techs., Inc.*, No. 16-1668, 2017 U.S. Dist. LEXIS 11393, at *9, (S.D. Ind. Jan. 27, 2017) ("Plaintiff argues the Court should find the Arbitration Provision in this case to be unenforceable based upon Lewis. However, the Seventh Circuit expressly declined in *Lewis* to decide the effect of an opt-out clause, such as the one in this case, on the enforceability of a class action waiver."); *Scroggins v. Uber Techs., Inc.*, No. 16-1419, 2017 U.S. Dist. LEXIS 10815, at *5-8 (S.D. Ind. Jan. 26, 2017) (reiterating the same point).

Contrary to Plaintiff's argument, the Board's holding in *On Assignment* is also not helpful to Plaintiff. As noted by Plaintiff, the Board, in that case, interpreted the NLRA to invalidate arbitration agreements that prohibit employees from participating in class action lawsuits, even if they contain opt out provisions. *On Assignment Staffing Servs.*, 362 NLRB 189, at *31. However, the Court declines to attribute any weight or persuasive authority to the Board's interpretation of the NLRA, because *On Assignment* was appealed to the Fifth Circuit by the petitioner challenging the Board's reading of the NLRA, and the Board's decision was ultimately reversed by the circuit.[5] *See On Assignment Staffing Servs. v. NLRB*, No. 15-60642, 2016 U.S. App. LEXIS 12750 (5th Cir., June 6, 2016). Significantly, other district courts have also explicitly declined to defer to the Board's interpretation of the NLRA on this basis. *See, e.g.*, *Lamour v. Uber Techs., Inc.*, No. 16-21449, 2017 U.S. Dist. LEXIS 29706, at *29 (S.D. Fla. Mar. 1, 2017) ("Because there is overwhelming appellate court precedent against the *On Assignment* decision, it is not entitled to deference by this Court, nor will I deem it persuasive authority."); *Scroggins v. Uber Techs., Inc.*, No. 16-1419, 2017 U.S. Dist. LEXIS 10815 (S.D. Ind. Jan. 26, 2017) ("[T]he Court also notes that *On Assignment Staffing* was summarily reversed by the Fifth Circuit . . . . [Thus,] the Court declines to defer to that reversed Board decision here.").

Furthermore, I do not find Plaintiff's reliance on *In re Fresh & Easy, LLC*, *Curtis*, and *Tigges,* which are non-binding, trial court decisions, persuasive, because they are based upon the

---

[5]     Courts have also refrained from deferring to the Board's interpretation of the NLRA in *On Assignment*, because the Board's holding, in that decision, was based upon its interpretation of the FAA, which "the Board has no special competence or experience in interpreting . . . ." *Lamour, Inc.*, 2017 U.S. Dist. LEXIS 29706, at *25 n.11 (internal citation and quotations omitted).

Board's reversed-decision in *On Assignment*. For all the reasons I have just delineated, I decline to adopt those courts' holdings here.[6]

## III. The Agreement's Class Waiver Does Not Violate the Norris-LaGuardia Act

Next, Plaintiff argues that the Arbitration Provision's class waiver is in violation of the Norris-LaGuardia Act (hereinafter, the "Act"). Pl.'s Opp'n, at 17-19. More specifically, Plaintiff argues that, under the Act, "courts cannot enforce promises—in the form of an agreement or otherwise—that interfere with employees' right to pursue class and collective litigation." Pl.'s Opp'n, at 17. According to Plaintiff, the Court must invalidate the Arbitration Provision because it prevents employees from "join[ing] co-workers in a judicial action in an effort to be paid wages that are legally owed." Pl.'s Opp'n, at 18.

Under § 2 of the Act, employees, as a matter of public policy, "shall be free from the *interference, restraint, or coercion* of employers of labor, or their agents, in the designation of . . . representatives [of their own choosing] or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . . " 29 U.S.C. § 102 (emphasis added). The rights accorded to employees under § 2 of the Act are enforced by § 3,

---

[6]     Furthermore, numerous district courts have recently found that voluntary arbitration agreements, like the one here, do not violate the NLRA. *Scroggins*, 2017 U.S. Dist. LEXIS 10815, at *5-8; *Gunn v. Uber Techs., Inc.*, No. 16-1668, 2017 U.S. Dist. LEXIS 11393 (S.D. Ind. Jan. 27, 2017); *Richemond v. Uber Techs., Inc.* No. 16-23267, 2017 U.S. Dist. LEXIS 12355 (S.D. Fla. Jan. 27, 2017); *Kai Peng v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 25840 (E.D.N.Y. Feb. 23, 2017); *Lamour*, 2017 U.S. Dist. LEXIS 29706, *29; *Rimel v. Uber Techs., Inc.*, No. 15-2191, 2017 U.S. Dist. LEXIS 48527 (M.D. Fla. Mar. 31, 2017); *Bell v. Ryan Transp. Serv., Inc.*, 176 F. Supp. 3d 1251, 1260-1262 (D. Kan. Mar. 31, 2016); *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166 (D. Colo. 2016); *Bruster v. Uber Techs. Inc.*, 15-2653, No. 15-2653, 2016 U.S. Dist. LEXIS 101312 (N.D. Ohio Aug. 2, 2016); *Kobren v. A-1 Limousine Inc.*, 2016 U.S. Dist. LEXIS 154012, at *11 (D.N.J. Nov. 7, 2016); *Zawada v. Uber Techs., Inc.*, No. 16-11334, 2016 U.S. Dist. LEXIS 178582 (E.D. Mich. Dec. 27, 2016).

which mandates that any "undertaking or promise in conflict with the public policy declared in section 102 . . . shall not be enforceable in any court of the United States . . . . " 29 U.S.C. § 103.

Here, Plaintiff's argument as to why the Arbitration Agreement is invalid under the Act is indistinguishable from the argument that this Court has already rejected above, in the context of the NLRA. Indeed, both the NLRA and Act prevent employers from engaging in coercive conduct. Therefore, the Arbitration Provision is not in violation of the Act, for the same reasons that the Arbitration Provision is not in violation of the NLRA; since the Arbitration Provision contains an opt out clause, Uber did not "interfere[], restrain[], or coerc[e]" Plaintiff in the exercise of his rights under the Act. In that regard, the Ninth Circuit has also found that an employee who has "freely elected to arbitrate employment-related disputes on an individual basis, without interference from [an employer] . . . cannot claim that enforcement of the agreement violates . . . the Norris-LaGuardia Act . . . . " *Johnmohammadi*, 755 F.3d at 1077. Accordingly, the Court declines to invalidate the Agreement on this basis.

## IV. The Agreement's Delegation Clause is Enforceable

Finally, Plaintiff argues that Agreement's delegation clause is unenforceable. In support, Plaintiff similarly reasons that the delegation clause is in violation of the NLRA and Act, "because it does not permit drivers to band together to challenge the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." Pl.'s Opp'n, at 20. Rather, Plaintiff argues that, under the parties' agreement, "if drivers want to contest [the delegation clause], a key provision of the labor agreement that governs every aspect of their relationship with Uber, they must do so individually, one by one." Pl.'s Opp'n, at 20-21.

Here, as an initial matter, Plaintiff correctly notes that, under the Supreme Court's severability rule, he must challenge the delegation clause specifically, as opposed to the validity

of the Arbitration Agreement as a whole. *Rent-A-Center*, 561 U.S. at 72 ("Accordingly, unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). However, Plaintiff's argument in support of invalidating the delegation clause, *i.e.,* that it prohibits concerted legal action, is, once again, identical to the argument that this Court already rejected in connection with the validity of the Arbitration Agreement. Thus, for the reasons noted above, the Court finds that the delegation clause does not violate the NLRA or Act.

Nevertheless, Plaintiff appears to additionally argue that the delegation clause is unconscionable. Pl.'s Opp'n, at 23-24. In support, Plaintiff first contends that the delegation clause is inconspicuously located within the text of the Arbitration Provision; that is, the clause is "buried in the arbitration provision—it is one sentence in an arbitration provision that spans five pages of a nineteen-page agreement." Pl.'s Opp'n, at 2. Second, Plaintiff contends that the "full implications" of the delegation clause "only become clear in light of the interaction between it, the arbitration provision, and the forum-selection clause." Pl.'s Opp'n, at 23. According to Plaintiff, therefore, the delegation clause cannot be enforced, as he was "unlikely" to have understood the meaning of the delegation clause, at the time of entering into the Raiser Agreement. Pl.'s Opp'n, at 23. The Court finds both arguments without merit.

Under California law,[7] a contract will be enforceable unless there are indicia of both procedural and substantive unconscionability. *Circuit City Stores v. Adams*, 279 F.3d 889, 893

---

[7] The Raiser Agreement contains a choice of law provision applying California law. *See* Colman Dec., ¶ 13, Ex. C, § 15.1 ("The interpretation of this Agreement shall be governed by California law . . . . "). Accordingly, in determining whether the Agreement is unenforceable, the Court must apply California's unconscionability analysis.

(9th Cir. 2002) (internal citation omitted). "When assessing procedural unconscionability, [courts] consider the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms." *Id.* (internal citation omitted). Satisfying the element of procedural unconscionability, alone, is insufficient to establish that a contract is unenforceable. Indeed, the contract must also contain indicia of substantive unconscionability. This prong of the analysis "involves whether the terms of the contract are unduly harsh or oppressive." *Id.* (internal citation omitted).

First, the location of the delegation clause does not support the position that the Agreement is procedurally unconscionable. Although Plaintiff contends that the delegation clause is "buried" within the Arbitration Agreement, the first page of the Agreement conspicuously states, in bold and capital text, that the Agreement contains an arbitration provision: "**IMPORTANT: . . . PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY . . . .**" Colman Dec., ¶ 13, Ex. C, at 1. A similar warning is prominently displayed at the beginning of § 15.3 of the Agreement, wherein the arbitration provision itself is located, under the boldly typed heading "Arbitration Provision:" IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against . . . Uber on an individual basis . . . unless you choose to opt out of the arbitration provision." Colman Dec., ¶ 13, Ex. C, § 15.3. Finally, in § 15.3(i), labeled "How This Arbitration Provision Applies," the Agreement, in a separate paragraph, and in standard font, plainly states that disputes pertaining to the "enforceability, revocability, or validity of the Arbitration Provision" are subject to arbitration. Colman Dec., ¶ 13, Ex. C, § 15.3(i). Therefore, Plaintiff had adequate notice of both the arbitration agreement and delegation clause.

Second, Plaintiff contends that the meaning of the delegation clause does not become apparent until the Agreement's choice of law provision, forum selection clause, and arbitration provision are also read. According to Plaintiff, the interaction of these various provisions make the Agreement difficult to comprehend. The Court notes that Plaintiff does not argue that the Agreement's various, interrelated provisions constitute substantive unconscionability; rather, he argues that it is a basis for invalidation.[8] However, even if the Court were to construe Plaintiff's argument as a basis for substantive unconscionability, it lacks merit. For instance, under basic principles of contract law, this Court presumes that Plaintiff "read [the Raiser Agreement] thoroughly." *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013). Therefore, barring certain exceptions, Plaintiff is prohibited from avoiding the impact of the Agreement's terms because: (a) he did not read the Agreement before signing it, or (b) he did not understand the terms and conditions of the Agreement. *Id.* ("Courts must also presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides. . . . "). Indeed, Plaintiff, in electronically signing the Agreement, represented that he read and understood its terms and conditions, including its delegation clause:

> **BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF [THE ARBITRATION AGREEMENT].**

---

[8] Indeed, for the reasons already set forth in *Singh*, the Court finds that the Raiser Agreement's plain language, in addition to the terms and conditions set forth therein, are clear and capable of being understood by a layman. *See Singh*, 2017 U.S. Dist. LEXIS 12033, at *15-20.

Colman Dec., ¶ 13, Ex. C, at 1. Therefore, Plaintiff, by his own admission, comprehended the full implications of the Agreement's terms and conditions at the time of execution. Thus, the Court finds that the delegation clause is valid and enforceable.

In conclusion, the Court holds that the parties entered into a valid and enforceable arbitration agreement, and Plaintiff must arbitrate his claims.[9] Typically, having made such a finding, this Court would proceed to the second step of the arbitration analysis under the FAA to determine whether the parties' disputes fall within the scope of the Agreement. However, because the parties have agreed to permit the arbitrator to decide issues of arbitrability under the Agreement's delegation clause, that determination shall be reserved for the arbitrator. Colman Dec., ¶ 13, Ex. C, § 15.3(i); *Rent-A-Center*, 561 U.S. at 68-69.

## DISMISSAL OF THE PROCEEDINGS

Upon an order compelling arbitration, Defendant asks the Court to dismiss the action, and Plaintiff has not requested a stay pending arbitration. The Third Circuit has held that the plain language of § 3 of the FAA "affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004). Because neither party requests a stay of the proceedings, the Court dismisses the case in favor of arbitration.

---

[9]    The Court notes that the Supreme Court has upheld an arbitration agreement that required employees to arbitrate claims on an individual basis under another labor related statute, *i.e.,* the Age Discrimination in Employment Act. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-32 (1991). The Supreme Court has, on numerous occasions, also found that collective arbitration proceedings undermine the practical advantages of utilizing arbitration as a method of dispute resolution. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) ("[C]lass arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013) (citing *AT&T Mobility* to reiterate this same point).

Date: May 31, 2017

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge